UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SENECA RESOURCES CORPORATION | * | CIVIL ACTION |
| VERSUS | * | NO. 05-250 |
| SUPERIOR DIVING COMPANY, INC. AND USI GULF COAST, INC. | * | SECTION "L"(5) |

### ORDER & REASONS

Pending before the Court is Defendants Superior Diving Company, Inc. and Osprey Underwriting Agency, Inc.'s Joint Motion for Partial Summary Judgment to Dismiss Consequential Damages Claims (Rec. Doc. 35). For the following reasons, the motion is GRANTED.

I.      BACKGROUND

On May 10, 1999, Seneca Resources Corporation ("Seneca") and Superior Diving Company, Inc. ("Superior") executed a Master Service Agreement ("MSA"). As of December 1, 2000, Seneca was the owner of the working interest in the oil, natural gas, and other minerals situated in the High Island Area, Block A-345 ("H.I. A-345"). The MSA governs Seneca's purchase of material and services from Superior. Furthermore, the MSA set forth the procedures through which Seneca could place Orders to Superior for materials and services. In addition, the MSA stipulated that Superior would provide certain warranties to Seneca guaranteeing that its materials and services were in compliance with the MSA.

On December 12, 2003, Seneca purchased a "smart buoy" from Superior. The "smart



buoy" was utilized in connection with Seneca's drilling operations. During January 2004, Superior was notified by a third-party that there was a problem with Seneca's "smart buoy." Accordingly, Superior contacted Seneca by telephone to discuss the "smart buoy." In the course of this telephone conversation, Superior informed Seneca that it would send a vessel to inspect the buoy.

On January 29, 2004, Superior arrived in Seneca's H.I. A-345 and performed work on Seneca's "smart buoy." During the course of Superior's work, Seneca alleges that the anchor or anchor chain/wire of Superior's Vessel, the M/V GULF DIVER III, came in contact with Seneca's well head. It is further alleged that this contact caused a large amount of gas to be released at high pressures which damaged the connected piping spools between the pipeline and the wellhead and allowed seawater to enter the pipeline. In addition, the force of the gas allegedly knocked the guard-cover for the hydraulic control umbilical off the wellhead. Furthermore, a small amount of condensate was also released. As a result of the contact, Seneca alleges that it suffered approximately $749,246.23 in damages for the repair and replacement of the wellhead and a much greater amount for loss of production damages, loss profit damages, and regulatory fines and assessments.

On January 28, 2005, Seneca filed suit against Superior and USI Gulf Coast Inc. ("USI"), Superior's producing agent for its insurance coverage, alleging that Superior and USI were liable to it for the damages it incurred as a result of Superior's work on its "smart buoy." On February 22, 2005, Seneca amended its complaint to add Osprey Underwriting Agency, Ltd. ("Osprey"), Superior's insurer, as a defendant and to eliminate any reference to USI.

In its complaint, Seneca asserted two causes of action. First, Seneca alleged that

Superior was negligent and, as such, Superior was liable to it for all repair and replacement damages, loss of production damages, loss profits, and regulatory fines and assessments. Second, Seneca alleged that it had reached a settlement with Superior and that Superior breached the settlement agreement. As such, Seneca contends that it is entitled to breach of settlement damages.

On December 29, 2005, Superior and Osprey filed a Joint Motion for Partial Summary Judgment that the Master Service Agreement was in Effect. On January 24, 2006, the Court granted Seneca and Osprey's motion finding that the MSA was in effect at the time of the January 29th accident.

## II. PRESENT MOTION

On January 30, 3006, Superior and Osprey filed the present motion contending that Seneca could not recover consequential damages under the MSA, pursuant to paragraph 20(b). In response, Seneca conceded that paragraph 20(b) waived consequential damages under the MSA. Seneca, however, asserted that its breach of settlement agreement claim and any consequential damages arising therefrom were not covered by the MSA and, thus, could not be dismissed.

## III. LAW AND ANALYSIS

Summary judgment is appropriate if the record, as a whole, shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To overcome summary judgment, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992).

In its Order and Reasons dated January 24, 2006, the Court found that the MSA was in effect during and applied to the January 29th incident. As such, pursuant to paragraph 20(b) of the MSA, which waives consequential damages, the Court finds that Seneca is precluded from recovering any consequential damages arising from the January 29th incident. Moreover, Seneca concedes this fact. Therefore, Seneca's claim for loss of production damages, loss profit damages, and regulatory fines and assessments arising out of the January 29th incident must be dismissed. The Court, however, does not reach any judgment as to Seneca's breach of settlement agreement cause of action.

## IV. CONCLUSION

For the foregoing reasons, Defendants Superior Diving Company, Inc. and Osprey Underwriting Agency, Inc.'s Joint Motion for Partial Summary Judgment to Dismiss Consequential Damages Claims is GRANTED. This Order and Reasons has no effect on Seneca Resources Corporation's breach of settlement agreement cause of action.

New Orleans, Louisiana, this 21st day of February, 2006.

UNITED STATES DISTRICT JUDGE