**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| SENECA RESOURCES CORPORATION | * | CIVIL ACTION |
| VERSUS | * | NO. 05-250 |
| SUPERIOR DIVING COMPANY, INC. AND USI GULF COAST, INC. | * | SECTION "L"(5) |

**ORDER & REASONS**

Pending before the Court is Defendant Osprey Underwriting Agency, Inc.'s Motion for

Partial Summary Judgment to Dismiss Physical Damages Claims (Rec. Doc. 79). For the

following reasons, the motion is DENIED.

**I.     BACKGROUND**

On May 10, 1999, Seneca Resources Corporation ("Seneca") and Superior Diving

Company, Inc. ("Superior") executed a Master Service Agreement ("MSA"). As of December 1,

2000, Seneca was the owner of the working interest in the oil, natural gas, and other minerals

situated in the High Island Area, Block A-345 ("H.I. A-345"). The MSA, which governs

Seneca's purchase of material and services from Superior, was drafted by Seneca and set forth

the procedures through which Seneca could place Orders to Superior for materials and services.

In addition, the MSA set forth the parties obligations regarding the procurement of insurance.

On December 12, 2003, Seneca purchased a "smart buoy" from Superior. The "smart

buoy" was utilized in connection with Seneca's drilling operations. During January 2004,

Superior was notified by a third-party that there was a problem with Seneca's "smart buoy."

Accordingly, Superior contacted Seneca by telephone to discuss the "smart buoy." In the course

of this telephone conversation, Superior informed Seneca that it would send a vessel to inspect

1

the buoy.

On January 29, 2004, Superior arrived in Seneca's H.I. A-345 and performed work on Seneca's "smart buoy." During the course of Superior's work, Seneca alleges that the anchor or anchor chain/wire of Superior's Vessel, the M/V GULF DIVER III, came in contact with Seneca's wellhead. It is further alleged that this contact caused a large amount of gas to be released at high pressures which damaged the connected piping spools between the pipeline and the wellhead and allowed seawater to enter the pipeline. In addition, the force of the gas allegedly knocked the guard-cover for the hydraulic control umbilical off the wellhead. Furthermore, a small amount of condensate was also released. This incident caused severe property damage to Seneca.

On January 28, 2005, Seneca filed suit against Superior and USI Gulf Coast Inc. ("USI"). On February 22, 2005, Seneca amended its complaint to substitute Osprey Underwriting Agency, Inc. ("Osprey"), Superior's liability insurer, in place of USI. In its complaint, Seneca asserted that Superior and Osprey are liable for the physical property damages sustained during the incident.

## II.    PRESENT MOTION

In its present motion, Osprey contends that Seneca assumed the risk of loss for its own property and, as such, there can be no liability on the part of Superior or Osprey. Section 21(a) of the MSA provides: "[Superior] and [Seneca] agree to provide the following insurances coverages set forth below. The provisions of this Contract concerning insurance that apply to [Superior] shall also apply to [Seneca], mutatis mutandis." Section 21(a)(4) requires the acquisition of "Physical Damage Insurance on each Party's own property to the extent of its

2

replacement cost with any deductions to be for the account of the Party owning the property."

Lastly, section 21(i) provides:

> In addition to all other obligations and undertakings by [Superior], all insurance
> coverages required by this Contract . . . shall be endorsed to name [Seneca]
> Indemnitees as additional insureds, shall extend to and protect [Seneca] Indemnitees
> to the full amount of coverages thereunder, and shall be sufficiently endorsed to
> waive all rights of subrogation or recourse against [Seneca], other [Seneca]
> Indemnitees, and [Seneca's] Insurers.

Pursuant to these three sections, Osprey asserts that Seneca assumed the risk of loss to its

property.  According to Osprey, section 21(a) makes it clear that Seneca has the same insurance

obligations as Superior.  Furthermore, under section 21(a)(4), Seneca was obligated to insure its

wellhead and equipment against physical damage.  Finally, under section 21(i), Seneca's

physical damage insurance policy was required to contain a waiver of subrogation against

Superior and its insurers.  Osprey claims that the interaction of these three sections constitutes an

assumption of risk of loss by Seneca and, thereby, eliminates any liability on the part of Superior

and Osprey pursuant to *Dow Chemical Co. v. Ashland Oil, Inc.*, 579 F.2d 902 (5th Cir. 1978),

and *Horizon Petroleum Co. v. Barges Dixie 162, 234 & 236*, 753 F.2d 382 (5th Cir. 1985).

## III.     LAW AND ANALYSIS

Summary judgment is appropriate if the record, as a whole, shows that there is no

genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To overcome

summary judgment, "the nonmoving party must come forward with specific facts showing that

there is a genuine issue for trial."  *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986).  The Court must view the evidence in the light most favorable to the nonmovant

and draw all reasonable inferences in the nonmovant's favor.  *King v. Chide*, 974 F.2d 653, 656

(5th Cir. 1992).

In the present case, Osprey's motion is based entirely upon the holdings of *Dow* and

*Horizon*.  These cases, however, are not applicable and, as such, Osprey's motion must fail as a

matter of law.

In both *Dow* and *Horizon*, the Fifth Circuit was faced with the interpretation of a contract

of affreightment.  *Horizon*, 753 F.2d at 383-84; *Dow*, 579 F.2d at 902.  In both cases, the

plaintiffs had contracted with the defendants for the shipment of cargo.  *Horizon*, 753 F.2d at

383-84; *Dow*, 579 F.2d at 903.  In the respective contracts, the plaintiffs undertook the obligation

to secure and maintain marine cargo insurance in which their insurers would waive their rights of

subrogation.  *Horizon*, 753 F.2d at 384 n.1; *Dow*, 579 F.2d at 902 n.1.  Furthermore, the

plaintiffs contractually assumed the risk of loss in the event that they failed to obtain the proper

insurance.[1]  *Horizon*, 753 F.2d at 384 n.1; *Dow*, 579 F.2d at 902 n.1.

In both cases, during shipment of the cargo, the cargo was damaged.  *Horizon*, 753 F.2d

at 383; *Dow*, 579 F.2d at 903.  As such, the plaintiffs sued the defendants alleging that the cargo

was damaged as a result of the defendants' negligence.  *Horizon*, 753 F.2d at 383; *Dow*, 579

---

[1] In *Dow*, clause 13 of the contract read, in part: "Cargo insurance will be <u>assumed</u> or carried by Shipper for his own account, with waiver of subrogation to the Carrier." *Dow*, 579 F.2d at 902 n.1.  In *Horizon*, clause 22 read, in part: "Charterer agrees to secure and maintain in effect a contract of cargo insurance, to the full market value of all cargoes transported hereunder, insuring damage, . . . etc., and to have Owner's name inserted as an additional insured in said policies, with loss payable to Charterer and Owner, as their respective interests may appear, and Owner shall be deemed to be co-insured, whether so named or not, or to secure a waiver of assignment and/or subrogation from the cargo underwriters in favor of Owner on account of any cargo claims paid by such underwriters. <u>In the event that Charterer shall fail to procure and maintain insurance as provided herein, Charterer shall be liable to hold Owner harmless from any claims or demand, losses, cost and expenses, to the same extent that the required insurance would have protected Owner</u> . . . ." *Horizon*, 753 F.2d at 384 n.1.

F.2d at 903.  In *Dow*, the court found that the plaintiff had contractually assumed the risk of loss

because it failed to procure and maintain any insurance.  *Dow*, 579 F.2d at 904.  In *Horizon*, the

court found that the plaintiffs had contractually assumed the risk of loss because they failed to

procure and maintain the proper insurance.  *Horizon*, 753 F.2d at 385.

Relying on these two cases, Osprey contends that the waiver of subrogation provision in

section 21(i) constitutes an assumption of the risk of loss by Seneca.  This contention is

incorrect.  In *Dow* and *Horizon*, the Fifth Circuit's holding was based upon the plaintiffs'

contractual assumption of the risk of loss, not the waiver of subrogation.  Considering that

Seneca did not contractually assume the risk of loss in the MSA, *Dow* and *Horizon* are

inapplicable to the present case.

Moreover, an insurer's waiver of subrogation, without more, does not operate against the

insured.  *Dant & Russell, Inc. v. Dillingham Tug & Barge Corp.*, 895 F.2d 507, 511 (9th Cir.

1989).  Therefore, since Seneca was only obliged to acquire an insurance contract waiving its

insurer's right of subrogation, Seneca did not assume the risk of loss.

## IV.    CONCLUSION

For the foregoing reasons, Osprey's  Motion for Partial Summary Judgment to Dismiss

Physical Damages Claims is DENIED.

New Orleans, Louisiana, this   24th   day of   April  , 2006.

_____
UNITED STATES DISTRICT JUDGE